*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT E. COMBS,

      Plaintiff-Appellant,

v

MARK ARMITAGE, MICHIGAN ATTORNEY
DISCIPLINE BOARD, MICHELLE GOETZ, and
MICHIGAN ATTORNEY GRIEVANCE
COMMISSION,

      Defendants-Appellees.

UNPUBLISHED
December 23, 2024
11:28 AM

No. 366787
Court of Claims
LC No. 23-000001-MB

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

Plaintiff appeals as of right, challenging an opinion and order of the Court of Claims granting summary disposition under MCR 2.116(C)(7) (governmental immunity) in favor of defendants, the Attorney Discipline Board (ADB), its executive director, Mark Armitage, the Attorney Grievance Commission (AGC), and its grievance administrator, Michael Goetz, thereby dismissing plaintiff's claims of gross negligence, and violations of his constitutional due-process rights, as well as his civil rights under 42 USC 1983 with regard to professional disciplinary proceedings. On appeal, plaintiff contends that exceptions to immunity exist and he should have been permitted to amend his complaint. We disagree and affirm.

## I. BACKGROUND

Plaintiff became licensed to practice law in Michigan in 1985. In 2020, the AGC disciplined plaintiff in Case No. 15-154-GA, suspending plaintiff's license to practice law. Plaintiff appealed that decision to the ADB, which affirmed and increased the discipline to disbarment. Plaintiff filed an application for leave to appeal in the Michigan Supreme Court, which was denied. *Grievance Administrator v Combs*, 508 Mich 896; 962 NW2d 303 (2021).

-1-

Subsequently, the ADB denied plaintiff's motion for relief from judgment in that case. [1] Shortly after, the ADB affirmed the hearing panel's order of disbarment in another case involving plaintiff's misconduct, Case No. 19-60-GA.[2] The Michigan Supreme Court also denied plaintiff's application for leave to appeal in that matter. *Grievance Administrator v Combs*, 510 Mich 941; 979 NW2d 657 (2022).

In late March 2022, plaintiff allegedly learned that his counsel for the disciplinary proceedings, Gregory Rohl, previously had an extramarital affair with one of the deciding ADB members. Rohl allegedly admitted the affair, and its acrimonious nature, to plaintiff, and also that Rohl and the ADB member communicated via telephone about plaintiff's case while the matter was pending. Neither Rohl nor the ADB member disclosed the affair to either the ADB or the parties during the prior disciplinary proceedings, and the ADB member did not recuse herself from consideration of plaintiff's appeals.

Upon learning of the affair, plaintiff, through new counsel, contacted defendants to inform them of the impropriety. Between April and July 2022, plaintiff (or his counsel) sent Armitage and Goetz, singularly and in combination, various letters and e-mails detailing the improper conduct, asserting that the conduct tainted the proceedings in violation of plaintiff's due-process rights, and seeking relief in the form of new hearings with new panel members in both cases. Plaintiff also asked the AGC to "identify what rules and procedures . . . would be followed" to address plaintiff's due-process concerns. The AGC responded that it was not addressing plaintiff's due-process concerns. At about the same time, defendant Armitage responded, stating that he was not aware that any of plaintiff's factual allegations were "undisputed" or that any contested matters had been reached by "any investigative body or factfinder." Armitage opined that it did not seem that remedial action could be taken, and stated that he knew of "no pending 'Due Process matter.' " Ultimately, defendants took no remedial action.

In December 2022, plaintiff filed suit in the Wayne Circuit Court naming as defendants his attorney, Rohl, plus the instant defendants. Plaintiff alleged that a conflict existed as a result of the ADB member's affair with Rohl, which tainted all the ADB's disciplinary proceedings in both Case Nos. 15-154-GA and 19-60-GA. According to plaintiff, upon notice of these facts, the instant defendants failed to follow any procedure to rectify the violation, and "ignored, denied, and refused" his request for due process, thereby depriving him of his constitutionally protected interest in maintaining his law license, in violation of his substantive and procedural due-process rights under the Fourth[3] and Fourteenth Amendments of the federal Constitution and Const 1963, art 1, § 17, and his right to a fair trial and impartial jury under the Sixth Amendment of the federal Constitution. Plaintiff additionally alleged that the offending actions occurred "under color of

---

[1] The ADB's final order for Case No.15-154-GA is available at
https://records.adbmich.org/adbmich/op/en/32/1/document.do (accessed November 14, 2024).

[2] The ADB's order for Case No. 19-60-GA is available at
https://records.adbmich.org/adbmich/op/en/26/1/document.do (accessed November 14, 2024).

[3] Plaintiff's complaint appears to reference the Fourth Amendment in error, given that that amendment protects against unreasonable searches and seizures.

law" in violation of 42 USC 1983.[4]  Plaintiff sought money damages, immediate reinstatement of his license, new hearings in Case Nos. 15-154-GA and 19-60-GA, a declaratory judgment that plaintiff's constitutional rights had been violated, and injunctive relief enjoining further acts in violation of his constitutional rights.

The instant defendants filed a notice of transfer to the Court of Claims on the basis that jurisdiction in that court was proper as to these defendants.[5]  Thereafter, defendants moved for summary disposition under MCR 2.116(C)(7), invoking the absolute immunity provided by MCR 9.125 for conduct arising out of the performance of their official duties.  Additionally, defendants argued that the ADB and AGC were not "persons" subject to suit within the meaning of 42 USC 1983.  Further, Armitage and Goetz were entitled to "qualified immunity under 42 USC 1983 because their conduct did not violate any clearly established constitutional rights such that a reasonable officer in their situation would have known their actions would be unlawful."  Thus, defendants were entitled to summary disposition under MCR 2.116(C)(7) with regard to the § 1983 claims also.  Moreover, defendants argued, this action constituted an impermissible collateral attack of the judgment imposing discipline upon plaintiff; any challenge to the discipline proceedings must be done by seeking reconsideration or by direct appeal.

Plaintiff responded that defendants were not immune from suit because plaintiff pleaded the gross-negligence exception to governmental immunity under MCL 691.1407(2) of the governmental tort liability act (GTLA), MCL 691.1401 *et seq*.  Plaintiff argued that an employer may be held vicariously liable for an employee's gross negligence.  Plaintiff asserted that, because questions related to gross negligence are generally questions of fact for a jury, summary disposition would be improper.  Regarding his § 1983 claim, plaintiff conceded that the ADB and AGC were not "persons" for purposes of such a claim.  However, plaintiff contended that Armitage and Goetz were subject to 42 USC 1983 because they are "individuals [who] abused their positions, while acting under color of state authority, by deceiving Plaintiff and by ignoring his requests to address the abuse of Due Process perpetrated against him."  Plaintiff noted that he was seeking prospective injunctive relief against the individuals working for the state because he was seeking either reinstatement of his law license or a new hearing with new panel members.  Finally, plaintiff argued that this action did not constitute an impermissible collateral attack of the judgment imposing discipline; rather, he was attacking the improper process that resulted in the judgment.  Accordingly, plaintiff argued, defendants' motion for summary disposition must be denied.

In their reply in support of their motion, defendants argued that plaintiff had not even addressed the immunity conferred by MCR 9.125, and that plaintiff's failure in this regard amounted to a concession that immunity applied; thus, dismissal under MCR 2.116(C)(7) was appropriate. Regarding the 42 USC 1983 claim, defendants noted that plaintiff conceded that the ADB and AGC were not "persons" subject to such a civil-rights suit, and had failed to contest that Armitage and Goetz were entitled to qualified immunity under this section.  Moreover, plaintiff

---

[4] Plaintiff also alleged legal malpractice against Rohl.

[5] Plaintiff's claim against his attorney, Rohl, who was not a state official, was to remain in the circuit court.

-3-

failed to explain how attacking the process is any less of a collateral attack on the judgment imposing discipline; thus, this argument must also be rejected.

On April 27, 2023, the Court of Claims entered an opinion and order granting defendants' motion for summary disposition under MCR 2.116(C)(7), holding that defendants were absolutely immune from this lawsuit under MCR 9.125 because they were sued for conduct arising out of the performance of their official duties. The court first noted that plaintiff relied on the gross-negligence exception to governmental immunity under the GTLA, and failed to even address defendants' claim for immunity under MCR 9.125. But plaintiff pleaded intentional acts, not negligent acts, and the GTLA does not contain an intentional tort exception to governmental immunity.

Turning to MCR 9.125, the court held that all defendants fell within that rule, and noted that they were entitled to absolute immunity if the conduct complained of by plaintiff arose "out of the performance of their duties." The Court of Claims reviewed the ADB's duties under MCR 9.110 and the factual allegation of the complaint pertaining to the ADB's inaction. The court then opined as follows:

> From these allegations, it is clear that plaintiff took issue with the procedures (or lack thereof) that the Board took when advised after it disciplined him that a deciding member of the Board had had an affair with plaintiff's counsel. Because one of the Board's duties is to "exercise continuing jurisdiction over orders of discipline and reinstatement" (MCR 9.110(E)(6)), plaintiff's complaint about the Board's failure to take action when informed of what plaintiff termed "tainted" disciplinary proceedings clearly arose out of the performance of the Board's duties.

Thus, the court determined that the ADB was entitled to absolute immunity under MCR 9.125.

The Court of Claims reached the same conclusion with respect to Armitage, the AGC, and Goetz because the conduct complained of by plaintiff also arose out of the performance of their official duties. Regarding Armitage, the court found it plausible that Armitage was one of the defendants that plaintiff alleged "were acting within the scope of their employment" when the events occurred that plaintiff complained about and Armitage's failure to act when plaintiff brought the due-process claims to his attention were acts arising from his official duties. As to the AGC, the court noted that the AGC is tasked with supervision of investigations over attorney misconduct, which necessarily entails ensuring that investigations do not infringe on an attorney's due-process rights. The Court of Claims determined that plaintiff's allegation that the AGC failed in that task related to conduct arising out of the AGC's performance of its duties. Finally, the court found that Goetz was one of the defendants that plaintiff acknowledged was "acting within the scope of their employment" when the events occurred that plaintiff complained about and that because the due-process concerns had been brought to his attention in his capacity as administrator of the AGC, his conduct was also arising out of the performance of his official duties. Therefore, the Court of Claims concluded that Armitage, the AGC, and Goetz were also entitled to absolute immunity under MCR 9.125. Accordingly, defendants' motion for summary disposition brought under MCR 2.116(C)(7) was granted.

-4-

Plaintiff moved for reconsideration, arguing that "governmental immunity statutes, and by logical extension, Michigan Court Rules do not apply where, as here, Plaintiff has alleged violations of the Michigan and the United States Constitutions." Plaintiff asserted that he had a vested property interest in his law license that was protected by the due-process clauses of the state and federal constitutions. Plaintiff further contended that, because he had alleged that defendants, as state actors and as a matter of custom or policy, had violated his constitutional rights, governmental immunity did not apply as explained by our Supreme Court in *Smith v Dep't of Pub Health*, 428 Mich 540, 544; 410 NW2d 749 (1987). See also *Mays v Governor*, 506 Mich 157, 188-189; 954 NW2d 139 (2020) (plurality opinion by BERNSTEIN, J.). The "custom or policy" at issue, according to plaintiff, was that defendants "would not disqualify members of the Board despite their impartiality, [] would not rectify the impact that such impartial Board proceedings had on" plaintiff's vested property right in his law license, and had no procedure to address such concerns. Accordingly, plaintiff requested reconsideration of the decision to dismiss his claims against defendants.

On June 21, 2023, the Court of Claims entered its opinion and order denying plaintiff's motion for reconsideration, holding that although plaintiff was "partially correct" that palpable error had occurred because the court failed to consider plaintiff's state and federal due process claims, the result was the same, i.e., defendants were entitled to summary disposition. The court first noted that plaintiff's response to defendants' motion for summary disposition offered no analysis of the principle he now relied on from *Smith*, and instead relied almost exclusively on MCL 691.1407 while only briefly referencing 42 USC 1983. The court then found that *Smith* was "not really on point" because plaintiff had not alleged that defendants by " 'virtue of a custom or policy' " violated a right conferred by the Michigan Constitution. The court determined that, because plaintiff had failed to support his legal theory in his initial response to defendant's motion for summary disposition, denial of the reconsideration motion was proper but that it would, nonetheless, briefly address it. The court then opined that the ADB and AGC, as arms of the Michigan Supreme Court and in the discharge of their official duties, are immune from suit under the Eleventh Amendment—just as the Michigan Supreme Court is immune. Further, the court found that, because Armitage and Goetz were employees of either the ADB or AGC and were acting in their official capacities, they were also immune as to plaintiff's claims arising from the performance of their statutory duties. Accordingly, plaintiff's motion was denied. This appeal followed.

Plaintiff argues that the Court of Claims erred in holding that defendants were entitled to absolute immunity with regard to his claims of gross negligence, and violations of his due-process rights, as well as his civil rights under 42 USC 1983. He also contends that he should have been permitted to amend his complaint. We conclude that none of plaintiff's arguments have merit.

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(7) is reviewed de novo. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007). Summary disposition is proper under this subrule when suit is barred because of immunity. See MCR 2.116(C)(7). "In determining whether summary disposition under MCR 2.116(C)(7) is appropriate, a court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically

contradict them." *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016) (quotation marks and citation omitted). The documentary evidence must be viewed in a light most favorable to the nonmoving party and, "[i]f there is no factual dispute, the determination whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law." *Allen Park Retirees Ass'n, Inc v Allen Park*, 329 Mich App 430, 444; 942 NW2d 618 (2019).

This Court reviews constitutional claims de novo. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). Whether governmental immunity applies is a question of law reviewed de novo. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006).

The interpretation of a court rule is a question of law subject to review de novo. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). The rules applicable to the interpretation of statutes apply to the construction of court rules. *Id*. "Clear and unambiguous language in a court rule must be given its plain meaning and enforced as written." *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 412; 766 NW2d 874 (2009). In construing MCR 9.125, this Court should be guided by MCR 9.102(A)'s declaration that "Subchapter 9.100 is to be liberally construed for the protection of the public, the courts, and the legal profession . . . ." See also *Grievance Administrator v Deutch*, 455 Mich 149, 165; 565 NW2d 369 (1997).

## III.  ANALYSIS

### A.  MCR 9.125 – ABSOLUTE IMMUNITY

Chapter 9 of the Michigan Court Rules applies to professional disciplinary proceedings. Subchapter 9.100 pertains specifically to the ADB and AGC. MCR 9.125 states, in relevant part, as follows:

> The administrator,[6] legal counsel, investigators, members of hearing panels, masters, voluntary investigators, fee arbitrators, mentors, practice monitors, the commission,[7] the board,[8] and their staffs are absolutely immune from suit for conduct arising out of the performance of their duties.

As the Court of Claims held, if no exception exists, MCR 9.125 provides defendants absolute immunity from suit. The allegations of the complaint relate to the failures of defendants to take any action with respect to plaintiff's concerns regarding the constitutional propriety of the underlying disciplinary proceedings. Any statements, or inactions, of defendants in this regard necessarily related to the disciplinary proceedings and are thus "conduct arising out of the performance of their duties" within the plain meaning of the rule. Defendants are therefore entitled to absolute immunity with regard to his claims unless an exception to immunity exists. Plaintiff argues that three exceptions to governmental immunity are applicable in this case: (1) a custom or

---

[6] MCR 9.101(3) defines "administrator" as "the grievance administrator."

[7] MCR 9.101(2) defines "commission" as "the Attorney Grievance Commission."

[8] MCR 9.101(1) defines "board" as "Attorney Discipline Board."

policy of defendants, as espoused by *Smith* and its progeny, violated plaintiff's constitutional rights; (2) Armitage and Goetz were grossly negligent as set forth under MCL 691.1407(2); and (3) plaintiff pleaded a valid 42 USC 1983 claim as to Armitage and Goetz. We consider each in turn.

## 1. CUSTOM OR POLICY EXCEPTION

With respect to his claims under the state constitution, plaintiff posits that an exception to the absolute immunity of MCR 9.125 exists under the principle espoused in *Smith* and *Mays*: that a state defendant may not claim immunity under a statute (or presumably court rule) when the plaintiff alleges that the state has violated its own constitution. Plaintiff acknowledges that this principle has not been expressly applied to MCR 9.125, but notes that the Michigan Supreme Court has made clear that the Michigan Constitution has primacy over laws establishing governmental immunity, and consequently argues that the absolute immunity of MCR 9.125 must yield in this case.

In *Smith*, 428 Mich at 544, which was a divided memorandum opinion, the Michigan Supreme Court held that "[w]here it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available in a state court action," and also that "[a] claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases."

Justice BOYLE's concurring opinion in *Smith*, while not binding, has often been cited as providing the reasoning for recognizing constitutional claims against the state in some instances. See *Mays*, 506 Mich at 188. Justice BOYLE reasoned as follows:

> Assuming the plaintiff proves an unconstitutional act by the state which is otherwise appropriate for a damage remedy, the question which confronts this Court is whether sovereign or governmental immunity shields the state from liability for damages for its alleged acts which violate our state constitution. . . .
>
> * * *
>
> The Michigan Constitution is a limitation on the plenary power of government, and its provisions are paramount. It is so basic as to require no citation that the constitution is the fundamental law to which all other laws must conform.
>
> * * *
>
> MCL 691.1407 [of the GTLA] does not, by its terms, declare immunity for unconstitutional acts by the state. The idea that our Legislature would indirectly seek to "approve" acts by the state which violate the state constitution by cloaking such behavior with statutory immunity is too far-fetched to infer from the language of MCL 691.1407. We would not ascribe such a result to our Legislature.
>
> Neither does common-law sovereign immunity immunize the state from liability for its alleged unconstitutional acts. This Court abrogated common-law

sovereign immunity in *Pittman v City of Taylor*, 398 Mich 41; 247 NW2d 512 (1976).

\* \* \*

Tort claims against government can, however, be premised on two separate theories: direct liability from the agency's own acts, or vicarious liability for the acts of its employees, officers, and agents. See *Ross v Consumers Power (On Rehearing)*, 420 Mich 567, 621-625; 363 NW2d 641 (1984). In *Ross*, p 624, we noted that "[respondeat] superior liability generally can be imposed only where the individual tortfeasor acted during the course of his or her employment and within the scope of his or her authority." For "constitutional torts," liability should only be imposed on the state in cases where a state "custom or policy" mandated the official or the employee's actions. . . .

The state's liability should be limited to those cases in which the state's liability would, but for the Eleventh Amendment, render it liable under the 42 USC 1983 standard for local governments articulated in *Monell v New York City Dep't of Social Services*, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978). Liability should be imposed on the state only where the action of a state agent "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or] governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.*, pp 690-691. Thus, statutory immunity would continue to bar suit for cases in which the only possible liability of the state is based upon respondeat superior. [*Smith*, 428 Mich at 640-643 (BOYLE, J., joined by CAVANAGH, J. (footnotes and selected citations omitted).]

Nearly 30 years later, in *Mays*, 506 Mich at 190-195, the Michigan Supreme Court considered whether governmental immunity applied to a claim that the state had violated the plaintiffs' substantive due-process right to bodily integrity under Const 1963, art 1, § 17. After discussing *Smith*, the Court determined the plaintiffs had alleged facts supporting a claim that the defendants had violated the Michigan Constitution, and also that a state "custom or policy" mandated the actions that led to the constitutional violation. *Mays*, 506 Mich at 193-195. With respect to whether a custom or policy has been sufficiently pleaded, the Court quoted with approval this Court's summary of pertinent principles:

Official governmental policy includes the decisions of a government's lawmakers and the acts of its policymaking officials. A "single decision" by a policymaker or governing body "unquestionably constitutes an act of official government policy," regardless of whether "that body had taken similar action in the past or intended to do so in the future[.]" *Pembaur v Cincinnati*, 475 US 469, 480; 106 S Ct 1292; 89 L Ed 2d 452 (1986). . . . The [United States Supreme] Court clarified that not all decisions subject governmental officers to liability. *Id.* at 481. Rather, it is "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483.

[*Mays*, 506 Mich at 194-195 (selected quotation marks and citations omitted; alterations in the original), quoting *Mays v Snyder*, 323 Mich App 1, 63-64; 916 NW2d 227 (2018).]

The Court concluded in *Mays* that, because the plaintiffs alleged that the state defendants had affirmatively adopted a plan that violated the plaintiffs' state constitutional rights, the plaintiffs had pleaded a cognizable due-process claim that was not subject to governmental immunity. *Mays*, 506 Mich at 195.

In the instant case, plaintiff pleaded both substantive and procedural due-process violations on the basis that defendants failed to address a purported due-process issue in the underlying disciplinary proceedings, the result of which deprived him of his vested property right—his law license. The Michigan Constitution provides that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. "[T]he substantive component [of due process] protects against the arbitrary exercise of governmental power, whereas the procedural component is fittingly aimed at ensuring constitutionally sufficient procedures for the protection of life, liberty, and property interests." *Bonner v City of Brighton*, 495 Mich 209, 224; 848 NW2d 380 (2014). For either type of claim, the requirements of due process are triggered only if the challenged governmental action implicates a protected life, liberty, or property interest. *Id*. at 225-226.

A close examination of plaintiff's complaint reveals that plaintiff did not plainly allege facts supporting either type of due-process violation. Plaintiff alleged that he asked defendants to remedy the alleged due-process violation in the underlying disciplinary proceedings, in which he was purportedly denied a fair proceeding by the inclusion of a biased board member and thereby wrongly deprived of his law license. Plaintiff specifically alleged that he asked the AGC to identify what rules or procedures would be used under the circumstances to rectify the constitutional violation. The record suggests that the AGC and Goetz did nothing in response, while the ADB also did nothing, and Armitage responded that he knew of "no pending Due Process matter."

It is significant that when these informal communications with defendants occurred, plaintiff no longer possessed a law license. Thus, even assuming that a law license is a cognizable property interest for purposes of due process, and defendants' actions could reasonably be viewed as threatening that interest, due process concerns were not implicated because plaintiff had no property interest at stake. See *Bonner*, 495 Mich at 225-226. Plaintiff has failed to bring to light either a substantive or procedural due process claim with respect to defendants' inactions.[9]

---

[9] To the extent plaintiff argues he was denied due process because he was deprived of an impartial decisionmaker in the disciplinary proceedings, that argument is precluded by the collateral bar rule. "[T]he 'collateral bar' rule generally prohibits a litigant from indirectly attacking a prior judgment in a later, *separate* action, unless the court that issued the prior judgment lacked jurisdiction over the person or subject matter in the first instance." *In re Ferranti*, 504 Mich 1, 22; 934 NW2d 610 (2019). Plaintiff's argument that he was denied due process in the disciplinary

Alternatively, if plaintiff had raised a cognizable due-process claim, plaintiff nonetheless failed to plead in avoidance of immunity as per *Smith* and *Mays*. Recall that, in the context of constitutional torts against the state, immunity will not be available if it is alleged that the state "by virtue of custom or policy," has violated its constitution. *Smith*, 428 Mich at 544. This analysis necessarily focuses on whether plaintiff has pleaded facts showing that defendants acted by "virtue of custom or policy." *Id.*

Again, plaintiff informally sought a remedy from defendants on multiple occasions. The ADB took no institutional action, and Armitage responded that he knew of "no pending Due Process matter." The AGC and Goetz did not respond at all. Under the circumstances, it is undisputed that no decision was made, or action taken, with respect to plaintiff's request. See *Mays*, 506 Mich at 194 (indicating that "decisions" and "acts" of governmental officials are customs and policies that subject the state to liability for constitutional torts). Absent facts indicating a deliberate choice among alternatives, that may be fairly said to represent official policy with respect to the matter at hand, defendants' failure to act cannot be deemed a custom or policy. See *id.* at 195 (citation omitted). Plaintiff has shown only that defendants failed to act. It follows that plaintiff has not shown that defendants, by virtue of a custom or policy, violated a right conferred by the Michigan Constitution. Therefore, the exception to governmental immunity for state constitutional torts espoused in *Smith* and *Mays* is unavailable to plaintiff.

Plaintiff argues that he alleged a "custom or policy" of defendants in paragraph 12 of the complaint. This paragraph states, in relevant part, as follows:

> Defendants failed to follow any form of procedures, or followed undefined, undeclared, unpublished procedures, and refused (despite many requests) to itemize and delineate what procedures were to be followed, depriving Plaintiff of property in a wrongful manner. No notice was provided to Plaintiff or counsel, and Plaintiff was deprived a fair decision making process by proper decision makers.

---

proceedings because of a biased decisionmaker is necessarily an attack on the judgment arising from those prior proceedings. Plaintiff, without citation of authority, argues he is not attacking the "judgment itself" in the disciplinary proceedings, but is attacking the process by which the judgment was reached, which renders the collateral bar rule inapplicable. Plaintiff makes a distinction without a difference, in that the process that he challenges resulted in the "punishment" of which he complains. Plaintiff also contends, again without citation of authority, that the collateral bar rule cannot apply because, temporally, he did not learn of the alleged due-process violation until after the disciplinary proceedings concluded. While the collateral bar rule would not preclude plaintiff from pursuing his claims against the instant defendants for events that happened after the conclusion of the disciplinary proceedings, the rule does preclude plaintiff from pursuing a due-process challenge to the judgments resulting from the disciplinary proceedings. Additionally, plaintiff did not raise this issue in his questions presented, and thus failed to properly present it for this Court's consideration. See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 543; 730 NW2d 481 (2007).

-10-

The allegations of this paragraph refer to defendants' failure to act or identify any procedures that might have been followed. While plaintiff labels such government inaction as a "custom or policy," plaintiff cites no legal authority for the proposition that such governmental *inaction*, absent deliberate indifference that represents official policy, qualifies as a "custom or policy" that would deprive defendants of the absolute immunity allowed by MCR 9.125. Simply labeling defendants' omissions as a "custom or policy" does not make them so.[10]

For all of these reasons, we reject plaintiff's argument that an exception to the absolute immunity of MCR 9.125 exists under the custom-or-policy exception espoused in *Smith* and *Mays*.

## 2. GROSS NEGLIGENCE

Plaintiff next argues that the immunity of MCR 9.125 is inapplicable under the gross-negligence exception of the GTLA, MCL 691.1407(2), as to his claims against Armitage and Goetz.[11]

The GTLA provides the state, its agencies, and its political subdivisions immunity from tort liability. MCL 691.1407(1); *Hannay v Dep't of Transp*, 497 Mich 45, 58-60; 860 NW2d 67 (2014). Concerning individual governmental actors, MCL 691.1407(2) states as follows:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

---

[10] We note that neither party has cited to any Michigan case law regarding whether or when inaction constitutes a custom or policy under *Smith* and its progeny for purposes of state constitutional torts. However, in the context of municipal liability under 42 USC 1983, the Michigan Supreme Court indicated that inaction will amount to a custom or policy if it reflects "some degree of fault" and amounts to "deliberate indifference" to the constitutional rights of the plaintiff. *York v Detroit*, 438 Mich 744, 754-756; 475 NW2d 346 (1991). The inaction must be so likely to result in a violation of constitutional rights, and the need for action so obvious, that the responsible policymakers could reasonably be found indifferent to the need. *Id*. (citation omitted). This cannot be said of defendants in the instant case, when plaintiff's allegations were unsubstantiated and plaintiff no longer possessed a property interest in his law license.

[11] In Issue IV of his questions presented, plaintiff raises the question whether "Appellee" is liable for the "unconstitutional and grossly negligent acts of its employee[s.]" Plaintiff, however, does not develop any argument related to vicarious liability. Therefore, this issue is abandoned. See *People v Coy*, 258 Mich App 1, 19-20; 669 NW2d 831 (2003).

-11-

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) *The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.* [Emphasis added.]

In *Yoches v City of Dearborn*, 320 Mich App 461, 476; 904 NW2d 887 (2017), this Court explained that the "gross negligence exception" applies only to an officer or employee of governmental agency, not the agency itself:

MCL 691.1407(1) provides immunity to a governmental agency without regard to an employee's gross negligence. MCL 691.1407(2) provides immunity for governmental employees, but MCL 691.1407(2)(c) provides an exception to that immunity when the employee's conduct constitutes gross negligence. Although subsection (2)(c) establishes an exception to the grant of immunity to an officer or employee of a governmental agency, it does not provide that a governmental agency otherwise entitled to immunity can be vicariously liable for the officer's or employee's gross negligence.

Although the gross-negligence exception to immunity could thus apply to defendants Armitage and Goetz, plaintiff has failed to confront a more fundamental problem: Whether this statutory exception extends to the absolute immunity provided by MCR 9.125. Arguably, the general statutory exception for gross negligence in MCL 691.1407(2) should not limit the broad immunity the Supreme Court set forth for the ADB and AGC and their agents in MCR 9.125.[12]

In any case, it is not necessary for this Court to analyze this matter further because, even if the statutory exception applied as a limitation on the scope of MCR 9.125, plaintiff has not pleaded facts constituting gross negligence. " 'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). The record in this case does not support characterizing either Armitage's or Goetz's inaction as so reckless as to demonstrate a lack of concern for plaintiff's constitutional rights. Instead, the record as a whole suggests deliberate omissions more characteristic of an intentional tort. See *Adams v Nat'l Bank of Detroit*, 444 Mich 329, 366; 508 NW2d 464 (1993) ("The defining characteristic of an intentional tort is an awareness that the act is being committed and an intent to invade the interests of another.").

Plaintiff alleged that Armitage and Goetz "ignored, denied and refused" his demands for due process, "have taken no action whatsoever" to address the same, and "refused" to inform him of what procedures were being followed despite their knowledge of plaintiff's due-process

---

[12] See Const 1963, art 6, § 5 (obligating the Supreme Court to issue rules to regulate the practice and procedures of the judiciary).

allegations. The parties' correspondence is consistent with the pleadings: Goetz took no action with respect to plaintiff's allegations, and Armitage explained that the facts were not undisputed and he was aware of "no pending Due Process matter." These inactions may, at most, be considered intentional omissions reflecting an intent not to address plaintiff's due-process concerns—but not reckless conduct. However, we are not persuaded that the failure to act on plaintiff's informal requests regarding his long-closed disciplinary cases could be considered intentional torts or reckless conduct, and certainly plaintiff could not establish that such omissions were the proximate cause of plaintiff losing his law license.[13] Consequently, even if the statutory gross-negligence exception operated with regard to MCR 9.125, plaintiff has not pleaded claims of gross negligence. Instead, as the Court of Claims found, plaintiff has pleaded, at most, intentional torts for which no exception to the governmental immunity provided by MCR 9.125, or by the GTLA, exists. See *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 328; 869 NW2d 635 (2015) (indicating that the GTLA includes no intentional-tort exception).

### 3. 42 USC 1983

Plaintiff argues that the immunity of MCR 9.125 is inapplicable because he pleaded a valid claim under 42 USC 1983. While plaintiff concedes that the ADB and AGC are not "persons" subject to suit under this section, he alleges that Armitage and Goetz are individuals subject to such liability.

The Michigan Supreme Court has recognized that governmental immunity is not a defense in civil rights actions under 42 USC 1983. See *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). Consequently, it appears that MCR 9.125 does not bar plaintiff's 42 USC 1983 claim.

Turning to the merits, 42 USC 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

A claim under 42 USC 1983 provides a remedy for violation of federal constitutional rights. *York v Detroit*, 438 Mich 744, 757; 475 NW2d 346 (1991). In such a suit brought against state officials in their official capacities, the plaintiff must demonstrate that a custom or policy of the governmental entity was the "moving force" behind the violation. *Hafer v Melo*, 502 US 21, 25; 112 S Ct 358; 116 L Ed 2d 301 (1991); *Kentucky v Graham*, 473 US 159, 166; 105 S Ct 3099; 87 L Ed 2d 114 (1985).

---

[13] Neither plaintiff's brief on appeal nor his reply brief explain why the conduct of Armitage and Goetz was allegedly *the proximate cause* of plaintiff losing his law license.

In this case, plaintiff raised violations of the Fourth,[14] Sixth, and Fourteenth Amendments of the United States Constitution. However, as previously concluded, neither Armitage's nor Goetz's inaction implicated any of plaintiff's due-process rights; plaintiff possessed no protected property interest that was affected by either Armitage or Goetz. Further, regarding the Sixth Amendment right to a fair trial, none of Armitage's or Goetz's inactions, *after* the disciplinary proceedings, touched on the fairness of those proceedings. Moreover, as already explained, the evidence as a whole did not suggest that either Armitage or Goetz failed to act because some custom or policy called for such inaction.

Yet, even assuming that plaintiff established that Armitage and Goetz acted pursuant to a policy that caused plaintiff to suffer a deprivation of these constitutional rights, Armitage and Goetz are entitled to immunity under the Eleventh Amendment. In the context of 42 USC 1983, the key limitation imposed by the Eleventh Amendment is that states and state agencies are not considered "persons" subject to suit under this statute. *Duckett v Solky*, 341 Mich App 706, 729; 991 NW2d 852 (2022). This immunity also extends to state officials when they are sued in their *official* capacities for damages. *Id.* ("[S]tate officials acting in an *official* capacity may [not] be sued under 42 USC 1983."). However, a lawsuit against a public official in that official's *individual* capacity for money damages is not barred by the Eleventh Amendment. *Id.* at 730.

Despite plaintiff's assertions to the contrary, this Court must presume plaintiff sued Armitage and Goetz in their official capacities because the complaint lacks a clear indication that plaintiff sought to sue these defendants in their individual capacities. See *Wells v Brown*, 891 F2d 591, 594 (CA 6, 1989) (requiring litigants to plead with specificity that a state official is being sued under 42 USC 1983 in the official's individual capacity); *Whittington v Milby*, 928 F2d 188, 193 (CA 6, 1991) (indicating that, for purposes of a 42 USC 1983 claim, "absent any indication that these defendants are being sued individually, [a court] must assume that they are being sued in their official capacities"). Plaintiff does not otherwise argue that immunity has been waived or that Congress has overridden any such immunity. Accordingly, Armitage and Goetz are entitled to immunity under the Eleventh Amendment, as held by the Court of Claims.

Finally, to the extent plaintiff argues that he can avoid Eleventh Amendment immunity against defendants because he seeks prospective injunctive relief, we reject such a claim.[15] Plaintiff does not seek only prospective injunctive relief. The primary focus of plaintiff's complaint and the relief sought is related to past action: plaintiff sought reversal of the result of the prior disciplinary proceedings, thus reinstatement of his law license, a new hearing, and damages. Reversal of a past decision is retroactive relief, no matter plaintiff's contrary characterization. See *S & M Brands, Inc v Cooper*, 527 F3d 500, 511 (CA 6, 2008) (when the

---

[14] Again, plaintiff likely pleaded a violation of the Fourth Amendment in error.

[15] Plaintiff does little to explain the law on this point. Apparently, plaintiff is referencing an exception known as the *Ex parte Young* doctrine, which allows 42 USC 1983 suits against state officials in their official capacities for *prospective injunctive relief* to enjoin continuing violations of federal law. See *Duckett*, 341 Mich App at 730-731, citing *Ex parte Young*, 209 US 123; 28 S Ct 441; 52 L Ed 714 (1908).

substance of a claim relates to a past decision and the plaintiff does not seek to restrain the defendants' future conduct, the relief sought is retroactive).

In sum, plaintiff failed to demonstrate that a viable exception applied to the immunity provided by MCR 9.125 or the Eleventh Amendment. Because defendants were entitled to immunity, the Court of Claims did not err by granting summary disposition in favor of defendants under MCR 2.116(C)(7).

## B. AMENDMENT TO COMPLAINT

On appeal, plaintiff included in his questions presented the issue whether the Court of Claims erred by not allowing him the opportunity to amend his complaint. However, plaintiff did not mention this issue in his principal brief on appeal. Instead, plaintiff, for the first time in his reply brief, argues that the Court of Claims erred by not providing him an opportunity to amend his complaint to more precisely state, and further describe, the three exceptions to governmental immunity he asserted. But plaintiff did not move to amend his complaint in the proceedings before the Court of Claims; thus, the Court of Claims did not address this matter. Because plaintiff did not file a motion to amend his complaint under MCR 2.118, plaintiff has forfeited any claim of error. See *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 318; 885 NW2d 892 (2015). Moreover, it is well established that when an appellant raises an issue in the statement of questions presented but fails to argue the merits of that issue in the brief, the issue is deemed abandoned. *Thompson v Thompson*, 261 Mich App 353, 356; 683 NW2d 250 (2004). "[R]aising an issue for the first time in a reply brief is not sufficient to present the issue for appeal." *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003). Only rebuttal argument may be properly included in reply briefs. *Id*. Accordingly, plaintiff is not entitled to appellate relief with regard to this forfeited and abandoned issue.

## IV. CONCLUSION

The Court of Claims did not err in granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7) because defendants are entitled to immunity under MCR 9.125 with respect to plaintiff's claims of gross negligence and violations of his constitutional due-process rights. Neither the custom-or-policy exception of *Smith* nor the statutory gross-negligence exception are applicable. Further, Armitage and Goetz are entitled to Eleventh Amendment immunity with respect to plaintiff's § 1983 claim. Finally, plaintiff has not established that he is entitled to appellate relief on his claim that he should have been permitted to amend his complaint.

Affirmed.

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace

-15-